# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| KAHLIL LEWIS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action No. 17-724-CFC |
| | ) | |
| CLAIRE DEMATTEIS, Commissioner, | ) | |
| Delaware Department of Corrections, | ) | |
| ROBERT MAY, Warden, | ) | |
| and ATTORNEY GENERAL OF THE | ) | |
| STATE OF DELAWARE, | ) | |
| | ) | |
| Respondents.[1] | ) | |

| | | |
|---|---|---|
| OMAR BROWN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action No. 17-726-CFC |
| | ) | |
| CLAIRE DEMATTEIS, Commissioner, | ) | |
| Delaware Department of Corrections, | ) | |
| ROBERT MAY, Warden, and | ) | |
| ATTORNEY GENERAL OF THE | ) | |
| STATE OF DELAWARE, | ) | |
| | ) | |
| Respondents. | ) | |

---

[1]Warden Robert May replaced former Warden Dana Metzger, an original party to the case. *See* Fed. R. Civ. P. 25(d).

JAMONN GRIER,              )

                      )

        Petitioner,        )

                      )

     v.                )     Civil Action No. 17-792-CFC

                      )

CLAIRE DEMATTEIS, Commissioner,  )

Delaware Department of Corrections,  )

ROBERT MAY, Warden, and       )

ATTORNEY GENERAL OFTHE      )

STATE OF DELAWARE,         )

                      )

        Respondents.     )

---

JOSE PEREZ,              )

                      )

        Petitioner,        )

                      )

     v.                )     Civil Action No. 17-830-CFC

                      )

CLAIRE DEMATTEIS, Commissioner,  )

Delaware Department of Corrections,  )

KOLAWOLE AKINBAYO, Warden,    )

and ATTORNEY GENERAL OF THE  )

STATE OF DELAWARE,         )

                      )

        Respondents.[2]    )

---

KHALIQ SCOTT,           )

                      )

        Petitioner,        )

                      )

     v.                )     Civil Action No. 17-905-CFC

                      )

CLAIRE DEMATTEIS, Commissioner,  )

Delaware Department of Corrections,  )

KOLAWOLE AKINBAYO, Warden,    )

and ATTORNEY GENERAL OF THE  )

THE STATE OF DELAWARE,     )

                      )

        Respondents.     )

---

[2]Warden Kolawole Akinbayo replaced former Warden Steven Wesley, an original party to the case. *See* Fed. R. Civ. P. 25(d).

CHAZ SMITH, )
 )
   Petitioner, )
 )
   v. )  Civil Action No. 17-907-CFC
CLAIRE DEMATTEIS, Commissioner, )
Delaware Department of Corrections, )
KOLAWOLE AKINBAYO, Warden, and )
ATTORNEY GENERAL OF THE )
STATE OF DELAWARE, )
 )
   Respondents. )

---

ERIC RODRIGUEZ, )
 )
   Petitioner, )
 )
   v. )  Civil Action No. 17-1140-CFC
 )
CLAIRE DEMATTEIS, Commissioner, )
Delaware Department of Corrections, )
KOLAWOLE AKINBAYO, Warden, and )
ATTORNEY GENERAL OF THE )
STATE OF DELAWARE, )
 )
   Respondents. )

| | | |
|---|---|---|
| THOMAS WINGFIELD, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action No. 17-1159-CFC |
| | ) | |
| CLAIRE DEMATTEIS, Commissioner, | ) | |
| Delaware Department of Corrections, | ) | |
| ROBERT MAY, Warden, and | ) | |
| ATTORNEY GENERAL OF THE | ) | |
| STATE OF DELAWARE | ) | |
| | ) | |
| Respondents. | ) | |

## <u>MEMORANDUM OPINION</u>

J. Brendan O'Neill and Nicole Marie Walker, Office of Defense Services for the State of Delaware, Wilmington, Delaware.

    Counsel for Petitioners Kahlil Lewis, Omar Brown, Jamonn Grier, Jose Perez, Khaliq Scott, Chaz Smith, Eric Rodriguez, Thomas Wingfield.

Matthew C. Bloom, Kathryn Joy Garrison, and Carolyn Shelley Hake, Deputy Attorney Generals, Delaware Department of Justice, Wilmington, Delaware.

    Counsel for Respondents.

September 3, 2020
Wilmington, Delaware

*Cohn F. Connolly*

CONNOLLY, UNITED STATES DISTRICT JUDGE:

Pending before the Court are eight separate but nearly-identical § 2254 Petitions. One Petition is filed by each of the following: Kahlil Lewis (Civ. A. No. 17-724-CFC); Omar Brown (Civ. A. No. 17-726-CFC); Jamonn Grier (Civ. A. No. 17-792-CFC); Jose Perez (Civ. A. No. 17-830-CFC); Khaliq Scott (Civ. A. No. 17-905-CFC); Chaz Smith (Civ. A. No. 17-907-CFC); Eric Rodriguez (Civ. A. No. 17-1140-CFC); and Thomas Wingfield (Civ. A. No. 17-1159-CFC).

All eight Petitioners were convicted of drug-related offenses between 2011 and 2013.  Petitioner Brown's conviction was the result of a stipulated bench trial, and the convictions for the remaining seven Petitioners (Lewis, Grier, Perez, Scott, Smith, Rodriguez, and Wingfield) were the result of guilty pleas.  Starting in the spring of 2014, Delaware's Office of Defense Services ("ODS") filed Rule 61 motions[3] in the Superior Court on behalf of the instant Petitioners, asserting an identical claim for relief that misconduct arising from issues relating to an evidence scandal in the Office of the Chief Medical Examiner ("OCME") constituted impeachment material under *Brady v. Maryland*, 373 U.S. 83 (1963).  The seven Petitioners who entered guilty pleas (Lewis, Grier, Perez, Scott, Smith, Rodriguez, and Wingfield) also argued that their guilty pleas were rendered involuntary under *Brady v. United States*, 373 U.S. 742 (1970) because the State failed to disclose evidence of OCME misconduct prior to the entry of their guilty pleas. The ODS, which had filed Rule 61 motions on behalf of numerous other defendants convicted of drug-related charges, chose Lewis's, Brown's, and six others'

---

[3]A Rule 61 motion is a motion for post-conviction relief filed pursuant to Delaware Superior Court Criminal Rule 61.

1

Rule 61 motions for the Superior Court to decide ("Rule 61/OCME Test Case"). *See State v. Miller*, 2017 WL 1969780, at *1 (Del. Super. Ct. May 11, 2017). Since the Rule 61 motions filed by the ODS in more than 700 other cases were identical to those in the Rule 61/OCME Test Case, the parties agreed that the Superior Court's decision in the Rule 61/OCME Test Case would resolve many of the remaining outstanding Rule 61 motions pending before the Superior Court (including the Rule 61 motions for the other six Petitioners here: Grier, Perez, Scott, Smith, Rodriguez, and Wingfield). *Id.* The Superior Court denied the Rule 61 motions in the Rule 61/OCME Test Case on May 11, 2017, *Id.*, and then denied the Rule 61 motions in the other cases after that disposition. None of the instant eight Petitioners appealed the denial of their Rule 61 motions.

Instead, they filed the § 2254 Petitions presently pending before the Court. Each Petition raises the same argument that the OCME misconduct constituted powerful impeachment material under *Brady v. Maryland*. (D.I. 2 in *Lewis*, Civ. A. No. 17-724-CFC; D.I. 3 in *Brown*, Civ. A. No. 17-726-CFC; D.I. 3 in *Grier*, Civ. A. No. 17-792-CFC; D.I. 3 in *Perez*, Civ. A. No. 17-830-CFC; D.I. 3 in *Scott*, Civ. A. No. 17-905-CFC; D.I. 2 in *Smith*, 17-907-CFC; D.I. 2 in *Rodriguez*, Civ. A. No. 17-1140-CFC; D.I. 2 in *Wingfield,* Civ. A. No. 17-1159-CFC). The seven Petitioners who pled guilty (Lewis, Grier, Perez, Scott, Smith, Rodriguez, and Wingfield) also contend that their guilty pleas were involuntary under *Brady v. United States* because the State failed to disclose evidence of the OCME misconduct prior to the Petitioner entering a guilty plea.

Soon after filing the instant Petitions, the Parties in each case filed a joint motion to stay briefing until Judge Stark resolved *Boyer v. Akinbayo*, Civ. A. No. 17-834-LPS, a case with the same procedural issue (*i.e.*, whether the petitioner's failure to appeal the

Superior Court's denial of his Rule 61 motion precluded habeas relief due to his purposeful failure to exhaust state remedies). On November 6, 2018, Judge Stark dismissed Boyer's habeas petition as procedurally barred and declined to issue a certificate of appealability. *See Boyer v. Akinbayo*, 2018 WL 5801545 (D. Del. Nov. 6, 2018).[4] Boyer filed a notice of appeal with the Third Circuit Court of Appeals. On April 11, 2019, the Third Circuit denied Boyer's request for a certificate of appealability because "[j]urists of reason could not debate that the District Court properly denied Appellant's 28 U.S.C. § 2254 habeas petition." (*See* D.I. 23 in *Boyer*, Civ. A. No. 17-834-LPS)

Following the decision in *Boyer*, the Court lifted the stay in each of the instant eight proceedings. Thereafter, the State filed an Answer in opposition to each Petition. In all eight Answers, the State contends that the Court is procedurally barred from reviewing the sole claim for relief because the Petitioners did not exhaust state remedies for that claim. (D.I. 12 at 9-17 in *Lewis,* 17-724-CFC; D.I. 13 at 9-18 in *Brown*, 17-726-CFC; D.I. 13 at 9-17 in *Grier*, Civ. A. No. 17-792-CFC; D.I. 15 at 13-21 in *Perez*, 17-830-CFC; D.I. 18 at 7-17 in *Scott*, Civ. A. No. 17-905; D.I. 14 at 5-13 in *Smith*, Civ. A. No. 17-907-CFC; D.I. 12 at 9-18 in *Rodriguez*, Civ. A. No. 17-1140-CFC; D.I. 13 at 18-26 in *Wingfield*, Civ. A. No. 17-1159-CFC) The State also contends that six of the eight Petitions are time-barred. (D.I. 12 at 5-9 in *Lewis*, Civ. A. No. 17-724-CFC; D.I. 13

---

[4]Several portions of this Memorandum Opinion are identical to what Judge Stark wrote in *Boyer*. Although the Court has independently considered the issues raised, it does not see any reason to reformulate the relevant analysis when Judge Stark's opinion thoroughly addresses the issues in dispute.

at 5-9 in *Brown*, 17-726-CFC; D.I. 13 at 6-9 in *Grier*, Civ. A. No. 17-792-CFC; D.I. 15 at 8-13 in *Perez*, 17-830-CFC; D.I. 12 at 5-9 in *Rodriguez*, Civ. A. No. 17-1140-CFC; D.I. 13 at 7-18 in *Wingfield*, Civ. A. No. 17-1159-CFC) None of the eight Petitioners filed replies.

The Court has considered each Petition, Answer, and all other materials submitted in each of the instant eight cases. Since the briefing in the eight cases is nearly identical in all material respects, and particularly with respect to the exhaustion/procedural bar issue, the Court finds that judicial economy would be served by their review and disposition together. Therefore, the Court *sua sponte* consolidates these cases for decision by a single Memorandum Opinion and Order to be filed in each case.[5] *See* Fed. R. Civ. P. 42(a); *In re TMI Litigation*, 193 F.3d 613, 724 (3d Cir. 1999) ("The purpose of consolidation is to streamline and economize pretrial proceedings so as to avoid duplication of effort, and to prevent conflicting outcomes in cases involving similar legal and factual issues."); *Ellerman Lines, Ltd. v. Atlantic & Gull Stevedores, Inc.*, 339 F.2d 673, 675 (3d Cir. 1964) (noting that a court may consolidate cases *sua sponte* or on motion of a party). For the reasons that follow, the Court will dismiss all the Petitions and deny the relief requested.

_____

[5]Since the exhaustion/procedural bar issue is identical and dispositive in each of the cases, the Court will not address the statute of limitations argument raised by the State in six of the Petitions. For simplicity, the Court's citations in the remainder of this Opinion are to the docket for Petitioner Lewis, Civ. A. No. 17-724-CFC, unless otherwise noted.

# I.    BACKGROUND

## A.    OCME CRIMINAL INVESTIGATION

The relevant information regarding the OCME evidence mishandling is set forth

below:

> In February 2014, the Delaware State Police ("DSP") and the Department of Justice ("DOJ") began an investigation into criminal misconduct occurring in the Controlled Substances Unit of the OCME.
>
> The investigation revealed that some drug evidence sent to the OCME for testing had been stolen by OCME employees in some cases and was unaccounted for in other cases. Oversight of the lab had been lacking, and security procedures had not been followed. One employee was accused of "dry labbing" (or declaring a test result without actually conducting a test of the evidence) in several cases. Although the investigation remains ongoing, to date, three OCME employees have been suspended (two of those employees have been criminally indicted), and the Chief Medical Examiner has been fired.
>
> There is no evidence to suggest that OCME employees tampered with drug evidence by adding known controlled substances to the evidence they received for testing in order to achieve positive results and secure convictions. That is, there is no evidence that the OCME staff "planted" evidence to wrongly obtain convictions. Rather, the employees who stole the evidence did so because it in fact consisted of illegal narcotics that they could resell or take for personal use.

*Brown v. State*, 108 A.3d 1201, 1204-05 (Del. 2015).

## B.    PROCEDURAL BACKGROUND FOR EACH PETITIONER

### 1.    <u>Kahlil Lewis</u>

On June 8, 2012, Lewis pled guilty to drug dealing with an aggravating factor.

(D.I. 2 at 4; D.I. 2-1 at 3 in Civ. A. No. 17-724-CFC)  That same day, the Superior Court

sentenced Lewis to eight years at Level V incarceration, suspended for one year of Level III probation. (D.I. 2 at 4; D.I. 2-2 in Civ. A. No. 17-724-CFC) Lewis did not file a direct appeal.

On February 13, 2015, Lewis pled guilty to possession of a firearm by a person prohibited ("PFBPP"). (D.I. 12 at 2 in Civ. A. No. 17-724-CFC) The Superior Court sentenced him to seven years of unsuspended time, followed by decreasing levels of supervision. (D.I. 13-23 at 92 in Civ. A. No. 17-724-CFC) As a result of the new 2015 conviction, the Superior Court also found Lewis in violation of his probation ("VOP") with respect to his 2012 drug conviction, and sentenced him to eight years of Level V incarceration, to be served consecutively to his PFBPP sentence. (D.I. 2-2; D.I. 13-7; D.I. 13-23 at 100 in Civ. A. No. 17-724-CFC).

On May 9, 2014, the ODS filed a Rule 61 motion on Lewis's behalf based on the misconduct at the OCME. (D.I. 13-2 in Civ. A. No. 17-724-CFC) The Superior Court denied Lewis's Rule 61 motion on May 11, 2017. *See Miller*, 2017 WL 1969780, at *16. Lewis did not appeal that decision.

On June 12, 2017, the ODS filed in this Court a § 2254 Petition on Lewis's behalf, asserting that the OCME misconduct constituted powerful impeachment material under *Brady v. Maryland*. (D.I. 2 at 18-19 in Civ. A. No. 17-724-CFC) Lewis contends that he might not have pled guilty if he had known that he might be able to cast doubt on the chemical composition of the drugs and, therefore, his guilty plea was involuntary pursuant to *Brady v. United States*. (*Id*. at 10-19) The State filed an Answer asserting that Lewis's Petition should be dismissed as procedurally barred because Lewis, like Boyer, did not present his claim to the Delaware Supreme Court on direct or post-

6

conviction appeal.  (D.I. 12 at 9-17 in Civ. A. No. 17-724-CFC)  The State alternatively

asserts that the Petition should be dismissed as time-barred.  (*Id.* at 5-9)

### 2. Omar Brown

On May 26, 2011, following a stipulated trial wherein Brown waived a jury trial

and did not contest the State's evidence established at the suppression hearing, the

Superior Court found Brown guilty of possession with intent to deliver a narcotic

schedule I controlled substance (cocaine) ("PWITD"), possession of a controlled

substance within 300 feet of a park, possession of a controlled substance within 1000

feet of a school, and criminal impersonation.  (D.I. 13 at 1 in Civ. A. No. 17-726-CFC);

*see Miller*, 2017 WL 196780, at *2.  On June 3, 2011, the Superior Court sentenced

Brown as a habitual offender to a mandatory three years at Level V incarceration,

followed by descending levels of supervision.  (D.I. 13 at 1 in Civ. A. No. 17-726-CFC);

*see Miller*, 2017 WL 196780, at *2.  Brown appealed, and the Delaware Supreme Court

affirmed his convictions and sentence October 31, 2011.  *See Brown v. State*, 35 A.3d

418 (Table), 2011 WL 5319900 (Del. Oct. 31, 2011).

On August 27, 2013, Brown filed a *pro se* Rule 61 motion.  (D.I. 14-1 at 6 in Civ.

A. No. 17-726-CFC).  On May 7, 2014, the ODS filed a Rule 61 motion for post-

conviction relief on Brown's behalf based on the OCME misconduct.  (D.I. 14-1 at 8 in

Civ. A. No. 17-726-CFC). The Superior Court ordered the ODS to represent Brown in

his August 2013 Rule 61 motion as well.  *Id.* at 9.  The Superior Court denied Brown's

Rule 61 motion on May 11, 2017.  *See Miller*, 2017 WL 1969780, at *16.; (D.I. 3-3 in

Civ. A. No. 17-726-CFC)  Brown did not appeal that decision.

On June 12, 2017, the ODS filed in this Court a § 2254 Petition on Brown's

behalf, asserting the same claim as already described above with respect to Lewis's Petition.  (D.I. 3 at 10-14 in Civ. A. No. 17-726-CFC)  The State filed an Answer asserting the same failure to exhaust/procedurally barred argument it made in connection with Lewis's Petition.  (D.I. 13 at 9-18 in Civ. A. No. 17-726-CFC)  The State alternatively asserts that Brown's Petition should be dismissed as time-barred.  (D.I. 13 at 6-9 in Civ. A. No. 17-726-CFC)

### 3. Jamonn Grier

On October 16, 2012, Grier pled guilty to drug dealing, possession of a firearm during the commission of a felony ("PFDCF"), and possession of a firearm by a person prohibited ("PFBPP").  (D.I. 13 at 1; D.I. 13-1 at 1-2 in Civ. A. No. 17-792-CFC)  On January 4, 2013, the Superior Court sentenced him to twelve years at Level V incarceration, suspended after ten years for two years of probation.  (D.I. 3-2 in Civ. A. No. 17-792-CFC)

On May 13, 2014, the ODS filed a Rule 61 motion on Grier's behalf based on the misconduct at the OCME.  (D.I. 14-4 in Civ. A. No. 17-792-CFC)  Grier then filed a *pro se* Rule 61 motion on May 21, 2014. (D.I. 14-5 in Civ. A. No. 17-792-CFC)  The Superior Court denied the Rule 61 motion(s) on June 5, 2017.  (D.I. 3-4 in Civ. A. No. 17-792-CFC)  Grier did not appeal that decision.

On June 20, 2017, the ODS filed in this Court a § 2254 Petition on Grier's behalf, asserting the same claim as already described above with respect to Lewis's Petition.  (D.I. 3 in Civ. A. 17-836-MN)  The State filed an Answer asserting the same failure to exhaust/procedurally barred argument it made in connection with Lewis's Petition.  (D.I. 13 at 9-17 in Civ. A. 17-792-CFC)  The State alternatively asserts that the Petition

should be dismissed as time-barred.  (*Id.* at 6-9)

### 4. <u>Jose Perez</u>

On September 17, 2012, Perez pled guilty to drug dealing (heroin) with an aggravating factor.  (D.I. 15 at 1; D.I. 16-2 at 1)  On that same day, the Superior Court sentenced Perez to ten years at Level V incarceration, suspended for ten years at Level IV work release, suspended after six months for eighteen months at Level III probation.  (D.I. 3-2 at 2 in Civ. A. No. 17-830-CFC)  Perez did not appeal his conviction or sentence.

On December 6, 2012, Perez filed a *pro se* Rule 61 motion, which the Superior Court withdrew at Perez's request on January 25, 2013.  (D.I. 3-1 at 2-3 in Civ. A. No. 17-830-CFC)

On December 18, 2013, Perez filed a *pro se* Rule 35(b) motion for modification of sentence, which the Superior Court denied on January 10, 2014.  (D.I. 3-1 at 3 in Civ. A. No. 17-830-CFC)  Perez did not appeal that decision.

On March 12, 2015, while Perez was serving the probationary portion of his sentence, the Superior Court found that he had violated his probation ("VOP") due to his January 13, 2015 arrest for shoplifting under $1500.  (D.I. 3-1 at 3-4; D.I. 15 at 2 in Civ. A. No. 17-830-CFC)  The Superior Court sentenced him to ten years at Level V, suspended for eighteen months of Level III supervision.   (D.I. 18-4 at 2 in Civ. A. No. 17-830-CFC)  Perez did not appeal.

On February 18, 2015, the ODS filed a Rule 61 motion on Perez's behalf based on the misconduct at the OCME.  (D.I. 16-1 at 4; D.I. 16-12 in Civ. A.17-830-CFC)  The Superior Court denied the Rule 61 motion on June 22, 2017.  (D.I. 3-4; D.I. 16-1 at 6; 3-

4 in Civ. A. No. 17-830-CFC) Perez did not appeal that decision.[6]

On June 27, 2017, the ODS filed in this Court a § 2254 Petition on Perez's behalf, asserting the same claim as already described above with respect to Lewis's Petition. (D.I. 3 in Civ. A. 17-830-CFC)  The State filed an Answer asserting the same failure to exhaust/procedurally barred argument it made in connection with Lewis's Petition. (D.I. 15 at 13-21 in Civ. A. 17-830-CFC)  The State alternatively asserts that the Petition should be dismissed as time-barred and as moot. (*Id.* at 8-13, 22-25)

### 5. **Khaliq Scott**

On October 31, 2013, Scott pled guilty to possession of a controlled substance at a tier 5 level and to possession of a deadly weapon by a person prohibited ("PDWPP"). (D.I. 19-1 at 2 in Civ. A. No. 17-905-CFC)  The Superior Court immediately sentenced him as follows: (1) for the possession of a controlled substance at a tier 5 level conviction, to ten years at Level V incarceration, suspended after two years for six months at Level IV, followed by eighteen months of Level III probation; and (2) for the PDWBPP conviction, to three years at Level V, suspended for twelve months of Level III probation. (D.I. 19-3 in Civ. A. No. 17-905-CFC)  Scott did not appeal his convictions or sentences.

On April 30, 2014, the ODS filed a Rule 61 motion on Scott's behalf based on the OCME misconduct. (D.I. 19-1 at 2; D.I. 19-4 in Civ. A. No. 17-905-CFC) The Superior Court denied Scott's Rule 61 motion on June 30, 2017. (D.I. 2-4 in Civ. A. No.

---

[6]Also on June 22, 2017, the Superior Court found Perez had violated his probation and sentenced him to ten years at Level V, suspended for eighteen months of Level III probation. (D.I. 16-1 at 6;  D.I. 18-8 in Civ. A. No. 17-730-CFC)

17-905-CFC)  Scott did not appeal that decision.[7]

On July 6, 2017, the ODS filed in this Court a § 2254 Petition on Scot's behalf, asserting the same claim as already described above with respect to Lewis's Petition. (D.I. 3 in Civ. A. No. 17-905-CFC)  The State filed an Answer asserting the same failure to exhaust/procedurally barred argument it made in connection with Lewis's Petition. (D.I. 18 at 7-17 in Civ. A. No. 17-905-CFC)

### 6. Chaz Smith

On December 18, 2013, Smith pled guilty to possession of a controlled substance in a tier five quantity.  (D.I. 15-3 in Civ. A. No. 17-907-CFC)  On December 26, 2013, the Superior Court sentenced him to fifteen years at Level V incarceration, suspended after eighteen months for decreasing levels of supervision. (D.I. 2-2 in Civ. A. No. 17-907-CFC)  Smith did not file a direct appeal.

On April 30, 2014, the ODS filed a Rule 61 motion on Smith's behalf.  (D.I. 15-6 in Civ. A. No. 17-907-CFC)  The Superior Court denied the motion on June 30, 2017. (D.I. 2-4 in Civ. A. No. 17-907-CFC)  Scott did not appeal that decision.

On July 17, 2017, Smith pled guilty to carrying a concealed weapon and possession of a controlled substance. (D.I. 14-1 at 1 in Civ. A. No. 17-907-CFC)  The Superior Court immediately sentenced him to nine years at Level V incarceration,

---

[7]The Superior Court found that Scott violated his probation ("VOP") on July 6, 2016, May 3, 2017, and June 21, 2018 after being arrested on new drug charges. (D.I. 19-1 at 4-7 in Civ. A. No 17-905-CFC)  The Superior Court sentenced Scott on his most recent VOP as follows: (1) for the possession conviction, to six years at Level V, suspended after one year for one year of Level III probation; and (2) for the PDWBPP conviction, to one year at Level V, with no probation to follow. (D.I.19-18 in Civ. A. No. 17-905-CFC)

suspended after five years for decreasing levels of supervision.  (D.I. 14-2 in Civ. A. No. 17-907-CFC)  In addition, on September 21, 2017, the Superior Court found that Smith violated his probation ("VOP") as a result of his new July 2017 conviction and sentenced him to six months at Level V (with credit for sixty-six days previously served) with no probation to follow.  (D.I. 17-9 in Civ. A. No. 17-907-CFC)  Smith will begin his VOP sentence after completing the Level V portion of his 2017 conviction.  (D.I. 14-3 in Civ. A. No. 17-907-CFC)

On July 6, 2017, the ODS filed in this Court a § 2254 Petition on Smith's behalf, asserting the same claim as already described above with respect to Lewis's Petition. (D.I. 2 in Civ. A. No. 17-907-CFC)  The State filed an Answer asserting the same failure to exhaust/procedurally barred argument it made in connection with Lewis's Petition. (D.I. 14 at 5-13 in Civ. A. No. 17-907-CFC)

### 7. Eric Rodriguez

On March 20, 2012, Rodriguez pled guilty to drug dealing.  (D.I. 13-3 in Civ. A. No. 17-1140-CFC)  That same day, the Superior Court sentenced him to five years at Level V incarceration, suspended after three months for decreasing levels of supervision.  (D.I. 2-2 in Civ. A. NO. 17-1140-CFC)  Rodriguez did not appeal his conviction or sentence.

Since his conviction, the Superior Court has found Rodriguez in violation of his probation ("VOP") on two occasions, most recently on October 23, 2017.  (D.I. 15-9 in Civ. A. No. 17-1140-CFC)  His most recent VOP sentence on his 2012 drug dealing conviction is eighteen months at Level V, suspended after sixty days for decreasing levels of supervision.  (D.I. 15-10 in Civ. A. No. 17-1140-CFC)

On June 19, 2014, the ODS filed a Rule 61 motion on Rodriguez's behalf based on the OCME misconduct. (D.I. 13-6 in Civ. A. No. 17-1140-CFC) The Superior Court denied Rodriguez's Rule 61 motion on July 5, 2017.   (D.I. 2-4 in Civ. A. No. 17-1140-CFC) Rodriguez did not appeal that decision.

On August 15, 2017, the ODS filed in this Court a § 2254 Petition on Rodriguez's behalf, asserting the same claim as already described above with respect to Lewis's Petition. (D.I. 2 in Civ. A. No. 17-1140-CFC) The State filed an Answer asserting the same failure to exhaust/procedurally barred argument it made in connection with Lewis's  Petition. (D.I. 12 at 9-18 in Civ. A. No. 17-1140-CFC) The State alternatively asserts that the Petition is time-barred. (D.I. 12 at 5-9 in Civ. A. No. 17-1140-CFC)

### 8. **Thomas Wingfield**

On December 1, 2011, Wingfield pled guilty to PWITD heroin. (D.I. 14-3 in Civ. A. No. 17-1159-CFC)  The Superior Court immediately sentenced him to fifteen years at Level V incarceration, suspended after two years for two years of decreasing levels of supervision, PFDCF, and assault in a detention facility.  (D.I. 15-9 in Civ. A. No. 17-1197-MN)  On January 17, 2014 the Superior Court sentenced him to ten years at Level V incarceration, suspended after five years for decreasing levels of supervision. (D.I. 2-2 in Civ. A. No. 17-1159-CFC)  Wingfield did not appeal his conviction or sentence.

On February 23, 2012, Wingfield filed a Rule 35 motion for sentence reduction, which the Superior Court denied on March 29, 2012.  (D.I. 14-4; D.I. 14-5 in Civ. A. No. 17-1159-CFC)  Wingfield did not appeal that decision.

On June 19, 2014, the ODS filed a Rule 61 motion on Wingfield's behalf, based on the OCME misconduct.  (D.I. 14-6 in Civ. A. No. 17-1159-CFC)  On July 27, 2017,

13

the Superior Court denied Wingfield's Rule 61 motion.  (D.I. 2-4 in Civ. A. No. 17-1159-CFC)

On August 17, 2017, the ODS filed in this Court a § 2254 Petition on Wingfield's behalf, asserting the same claim as already described above with respect to Lewis's Petition.  (D.I. 2 in Civ. A. No. 17-1159-CFC) The State filed an Answer asserting the same failure to exhaust/procedurally barred argument it made in connection with Lewis's

 Petition.  (D.I. 13 at 18-26 in Civ. A. No. 17-1159-CFC)  The State alternatively asserts that the Petition is time-barred.  (D.I. 13 at 7-18 in Civ. A. No. 17-1159-CFC)

## II.    GOVERNING LEGAL PRINCIPLES

### A. Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003).  Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

### B. Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief

14

unless the petitioner has exhausted all means of available relief under state law. *See* 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). The exhaustion requirement is based on principles of comity, requiring a petitioner to give "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 844-45; *see also Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the exhaustion requirement by fairly presenting all claims to the state's highest court, either on direct appeal or in a post-conviction proceeding, in a procedural manner permitting the court to consider the claims on their merits. *See Bell v. Cone*, 543 U.S. 447, 451 n.3 (2005); *Castille v. Peoples,* 489 U.S. 346, 351 (1989).

A petitioner may be excused from exhausting state remedies when there is either an absence of an available State corrective process or the existence of circumstances, such as futility or inordinate delay, that render such processes ineffective. *See* 28 U.S.C. § 2254(b)(1)(B); *Duckworth v. Serrano*, 454 U.S. 1 (1981). Situations falling within the "ineffective corrective process" exception to the exhaustion requirement include those instances when "(1) the state corrective process is so deficient as to render any effort to obtain relief futile []; (2) acts of state officials have, in effect, made state remedies unavailable to the petitioner []; or (3) 'inordinate delay' in state proceedings has rendered state remedies ineffective." *Kozak v. Pennsylvania*, 2012 WL 4895519, at *4 (M.D. Pa. Oct 15, 2012). When a failure to exhaust is excused due to an ineffective corrective process, the court may review a claim on its merits without engaging in the procedural default analysis. *See, e.g., Lee v. Strickman*, 357 F.3d 338,

15

344 (3d Cir. 2004); *Story v. Kindt*, 26 F.3d 402, 405-06 (3d Cir. 1994); *Woodruff v. Williams*, 2016 WL 6124270, at *1 (E.D. Pa. Oct. 19, 2016).

However, if a petitioner's failure to exhaust does not fall within the aforementioned "ineffective corrective process" exception, and state procedural rules bar the petitioner from seeking further relief in state courts, the claims, while technically exhausted, are procedurally defaulted. *See Lines v. Larkins,* 208 F.3d 153, 160 (3d Cir. 2000); *Coleman v. Thompson*, 501 U.S. 722, 732 (1991) (noting that a "habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion; there are no state remedies any longer 'available' to him."). Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is technically exhausted but procedurally defaulted. *See Coleman*, 501 U.S. at 750; *Harris v. Reed*, 489 U.S. 255, 260-64 (1989). A federal court cannot consider the merits of procedurally defaulted claims unless the petitioner establishes cause and prejudice to excuse the default, or that a fundamental miscarriage of justice will result absent review of the claims. *See Lines*, 208 F.3d at 160.

## III.   DISCUSSION

### A. Exhaustion

All eight Petitioners acknowledge that they did not exhaust state remedies for their habeas claim due to their failure to appeal the denial of their Rule 61 motions to the Delaware Supreme Court. (D.I. 2 at 4) However, they present three arguments as to why the Court should excuse their failure to exhaust on the basis of futility: (1)

16

exhausting state remedies by appealing the Superior Court's Rule 61 decision would
have been futile because of the Superior Court's inordinate delay in adjudicating his
Rule 61 motion ("inordinate delay" excuse); (2) appealing the denial of their Rule 61
motions to the Delaware Supreme Court would have been futile because that court has
rejected identical claims based upon the OCME misconduct in other cases for
postconviction relief ("futility on the merits" excuse); and (3) appealing the denial of their
Rule 61 motions to the Delaware Supreme Court would have been futile because Rule
61 does "not provide an adequate opportunity for [Petitioner]s to obtain relief" ("futility
due to deficiency of Rule 61 proceedings" excuse) (D.I. 2 at 4-7).  The State contends
that Petitioners' failure to exhaust should not be excused for any of these futility reasons
and, since state criminal procedural rules preclude them from returning to the state
courts for further review, the claim is now technically exhausted but procedurally
defaulted.  (D.I. 12 at 9-17) The Court will discuss Petitioners' arguments *in seriatim*.

### 1. Futility Due to Inordinate Delay During Rule 61 Proceeding

"[I]nexcusable or inordinate delay by the state in processing claims for relief may
render the state remedy effectively unavailable," thereby warranting excusing the
exhaustion requirement. *Story*, 26 F.3d at 405.  "The existence of an inordinate delay
does not automatically excuse the exhaustion requirement, but it does shift the burden
to the state to demonstrate why exhaustion should still be required." *Lee*, 357 F.3d at
341.

Neither the United States Supreme Court nor the Third Circuit has defined the
specific amount of time that constitutes inordinate delay in a petitioner's post-conviction
proceedings.  As explained by the Third Circuit,

17

> We stated in *Wojtczak v. Fulcomer,* 800 F.2d 353, 354 (3d Cir. 1986), that "inexcusable or inordinate delay by the state in processing claims for relief may render the state remedy effectively unavailable." In that case, thirty-three months had passed after the petitioner's PCRA filing without resolution. *Id.* This, we found, excused the petitioner's failure to exhaust his state court remedies. *Id.* at 356. The thirty-three month delay in *Wojtczak* remains the shortest delay held to render state collateral proceedings ineffective for purposes of the exhaustion requirement.

*Cristin v. Brennan,* 281 F.3d 404, 411 (3d Cir. 2002) (refusing to excuse exhaustion in the face of twenty-seven month delay); *see also Lee,* 357 F.3d at 343-44 (excusing exhaustion after eight year delay); *Coss v. Lackawanna County Dist. Att'y,* 204 F.3d 453, 460 (3d Cir. 2000) (*en banc*) (excusing exhaustion after seven year delay), *rev'd on other grounds,* 532 U.S. 394 (2001); *Story,* 26 F.3d 402, 406 (3d Cir. 1994) (excusing exhaustion after nine year delay). Generally, courts in the Third Circuit have excused a petitioner's failure to exhaust state remedies where the following three factors are present: (1) the delays in the state court proceedings have amounted to three, five, eleven, or twelve years;[8] (2) no meaningful action towards resolution has been taken in the state court; and (3) the delay was not attributable to the petitioner. *See Simmons v. Garman,* 2017 WL 2222526, at *3 (E.D. Pa. Feb. 14, 2017).

Federal courts consider the degree of progress made by the state courts when determining whether a delay is inordinate. *See Lee,* 357 F.3d at 342. In cases where courts have excused exhaustion due to an inordinate delay, the delay in the petitioners' state post-conviction proceedings was still ongoing at the time of federal habeas review.

---

[8]*See Story,* 26 F.3d at 405-06 (citing cases).

*See Wojtczak*, 800 F.2d at 354 (unresolved after thirty-three months); *cf. Cristin*, 281 F.3d at 411 (concluding that thirty-three month delay did not excuse exhaustion under inordinate delay exception as state court ruled on Cristin's state post-conviction petition one week after he filed his federal habeas petition); *Wallace v. Dragovich*, 143 F. App'x 413, 418 (3d Cir. 2005) (finding that petitioner's failure to exhaust was not excusable on basis of inordinate delay, where previously stalled state habeas proceeding had resumed).  The Court has not identified any cases holding that a petitioner's failure to exhaust can be excused on the basis of a delay in a state post-conviction proceeding when that delay has already ended.  *See, e.g.*, *Vreeland v. Davis*, 543 F. App'x 739, 741-42 (10th Cir. 2013).

Here, none of the eight Petitioners appealed the denial of their Rule 61 motions. In fact, they admit they purposefully decided to forgo post-conviction appeals in order to proceed immediately with federal habeas petitions.  (D.I. 2 at 4)  Petitioners assert that the average three-year span between the filing of their Rule 61 motions and the Superior Court's adjudication of those motions constitutes inordinate delay and the possibility of continued delay in the Delaware Supreme Court "unnecessarily risk[ed] mooting [Petitioners'] federal claims before [they] [would be] able to reach Federal Court."  (D.I. 2 at 6)

The Court rejected an almost identical argument in *Boyer*, because Boyer's post-conviction proceeding was not in a state of suspended animation when he filed his habeas Petition.  *See Boyer*, 2018 WL 5801545, at *4-5.  The Court also noted that Boyer's mistrust of the Delaware Supreme Court's ability to decide his post-conviction

19

appeal within a certain time-frame was insufficient to excuse him from exhausting state court remedies for his claim.  *See Boyer*, 2018 WL 5801545, at *4-5.

Like Boyer, Petitioners did not file their Petitions while their Rule 61 motions were in a state of suspended animation.  As a result, Petitioners also cannot rely on allegations of inordinate delay to excuse their failure to exhaust.

### 2. Futility on the Merits

Petitioners also ask the Court to excuse their failure to exhaust on the ground that it would have been futile to present their claim to the Delaware Supreme Court, because that court has already considered and rejected numerous identical or similar OCME misconduct claims.  (D.I. 2 at 5-6)  But futility on the merits does not constitute cause for a procedurally defaulted claim.  *Engle v. Isaac*, 456 U.S. 107, 130 (1982) (petitioner "may not bypass the state courts simply because he thinks they will be unsympathetic to the claim").  The Third Circuit has applied *Engle*'s reasoning in the context of exhaustion, opining that "likely futility on the merits [] in state court of a petitioner's habeas claim does not render that claim exhausted within the meaning of § 2254(b)(1)(A) so as to excuse the petitioner's failure to exhaust that claim by presenting it in state court before asserting in a federal habeas petition."  *Parker v. Kelchner*, 429 F.3d 58, 64 (3d Cir. 2005).  More specifically, "[a]llowing petitioners to bypass state court merely because they believe that their constitutional claims would have failed there on the merits would fly in the face of comity and would deprive state courts of a critical opportunity to examine and refine their constitutional jurisprudence."  *Id.*

Both the procedural history of Petitioners' Rule 61 proceedings and the instant "futility on the merits" argument are substantially similar to the procedural history of

20

Boyer's Rule 61 proceeding and Boyer's "futility on the merits" argument. *See Boyer*, 2018 WL 5801545, at \*4-5. Applying the reasoning in *Engle* and *Parker*, the Court declined to excuse Boyer's failure to exhaust his claims on the basis of "likely futility on the merits." *Boyer*, 2018 WL 5801545, at \*5. The Third Circuit agreed; it declined to grant Boyer a certificate of appealability, explicitly stating, "We have rejected the argument that likely futility on the merits of a claim in state court excuses a habeas petitioner's failure to exhaust that claim." (*See* D.I. 23 in *Boyer*, Civ. A. No. 17-834-LPS) Given these circumstances, the Court concludes that Petitioners' failure to exhaust state remedies is not excused on the ground of likely futility on the merits.

### 3. **Deficient Rule 61 procedures**

In their last attempt to justify the failure to exhaust state remedies, Petitioners contend that Rule 61's procedures are so deficient that the Rule would not have provided them with an opportunity to obtain relief, thereby demonstrating that it would have been futile to present their claim to the Delaware Supreme Court on post-conviction appeal. (D.I. 2 at 7) However, "[f]ederal courts may upset a State's postconviction relief procedures only if they are fundamentally inadequate to vindicate the substantive rights provided." *Dist. Attorney's Office for the Third Jud. Dist. v. Osborne*, 557 U.S. 52, 69 (2009). Federal courts may excuse the exhaustion requirement when "it appears that the prisoner's rights have become an 'empty shell' or that the state process is a 'procedural morass' offering no hope of relief." *Hankins v. Fulcomer*, 941 F.2d 246, 250 (3d Cir. 1991).

Here, Petitioners do not substantiate their contention that Rule 61 is inadequate, nor do they cite any case finding that Rule 61 is a deficient corrective process. In fact,

this Court has consistently found that Rule 61 is an independent and adequate state procedural ground that precludes federal habeas review. *See, e.g., Trice v. Pierce*, 2016 WL 2771123, at *4 (D. Del. May 13, 2016); *Maxion v. Snyder*, 2001 WL 848601, at *10 (D. Del. July 27, 2001). Petitioners' conclusory allegations about the inadequacy of Rule 61 do not demonstrate that its procedures are an "empty shell" or a "procedural morass offering no hope for relief."

In sum, for the aforementioned reasons, the Court concludes that Petitioners' failures to exhaust state remedies do not fall within the narrow "futility" exception to the exhaustion doctrine.

## B. Procedural Default

Having determined that Petitioners' intentional failures to appeal the denial of their Rule 61 motions are not excusable, Petitioners' habeas claims remain unexhausted. At this juncture, any attempt by Petitioners to exhaust state remedies by presenting the claims in new Rule 61 motions would be barred as untimely under Delaware Superior Court Criminal Rule 61(i)(1) and as successive under Rule 61(i)(2). *See* Del. Super. Ct. Crim R. 61(i)(1) (establishing a one year deadline for filing Rule 61 motions); Del. Super. Ct. Crim. R. 61(i)(2) (barring second or successive Rule 61 motion unless certain pleading requirements are satisfied). Consequently, the Court must treat the claim as technically exhausted but procedurally defaulted, which means that the Court cannot review the merits of the claim absent a showing of cause and prejudice, or that a miscarriage of justice will result absent such review. *See Lines*, 208 F.3d at 160.

To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with

22

the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show "that [the errors at trial] worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. *See Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Wenger v. Frank,* 266 F.3d 218, 224 (3d Cir. 2001). A petitioner demonstrates a miscarriage of justice by showing a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray,* 477 U.S. at 496. Actual innocence means factual innocence, not legal insufficiency. *See Bousley v. United States*, 523 U.S. 614, 623 (1998). In order to establish actual innocence, the petitioner must present new reliable evidence – not presented at trial – that demonstrates "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 537-38 (2006); *see also Sweger v. Chesney,* 294 F.3d 506, 522-24 (3d Cir. 2002).

To the extent Petitioners' three-pronged futility argument should also be viewed as an attempt to establish cause for their procedural default, the argument is unavailing. In order to establish cause, Petitioners must demonstrate that an external factor prevented them from appealing the denial of their Rule 61 motion. However, nothing prevented Petitioners from filing post-conviction appeals—they simply elected not to do so. Thus, Petitioners' belief that it would have been futile to present their claim to the Delaware Supreme does not constitute cause for their procedural default.

In the absence of cause, the Court does not need to address prejudice.  The Court further concludes that the miscarriage of justice exception does not excuse Petitioners' procedural default.  Although Petitioners contend that there is a reasonable probability that they would not have pled guilty had they known about the OCME misconduct, and also that they may have sought and received "a substantial reduction in the plea-bargained sentence as a condition of forgoing a trial" (D.I. 2 at 18), neither of these assertions constitutes new reliable evidence of their actual innocence. Accordingly, the Court will deny the instant Petitions as procedurally barred from federal habeas review.

## IV.   EVIDENTIARY HEARING

As an alternative request for relief, Petitioners summarily ask the Court to "hold an evidentiary hearing and allow full briefing on his claim."  (D.I. 2 at 20)  It is unclear whether they request an evidentiary hearing on the underlying OCME misconduct/involuntary guilty plea claim or on the procedural default of that claim.

### A.    Evidentiary Hearing On OCME Misconduct/Involuntary Guilty Plea Claim

AEDPA permits evidentiary hearings on habeas review in a limited number of circumstances.[9]  *See Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000).  For

---

[9]Prior to the enactment of AEDPA, "the decision to grant an evidentiary hearing was generally left to the sound discretion of district courts."  *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).  However, evidentiary hearings were mandatory in six specific circumstances:  (1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state-court hearing; or (6) for any reason it appears that the state trier of fact did not afford the

instance, 28 U.S.C. § 2254(e) provides:

> (1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.
>
> (2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that –
>
>> (A) the claim relies on –
>>
>>> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>>>
>>> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>>
>> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2). The "initial inquiry" when determining whether to grant an

evidentiary hearing is whether the petitioner has "failed to develop the factual basis" of

the claim in state court.  *See* 28 U.S.C. 2254(e)(2); *Williams v. Taylor*, 529 U.S. 420,

433 (2000). "Under the opening clause of § 2254(e)(2), a failure to develop the factual

basis of a claim is not established unless there is a lack of diligence, or some greater

---

habeas applicant a full and fair fact hearing. *Townsend v. Sain*, 372 U.S. 293, 312 (1963), *overruled on other grounds by Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992). While AEDPA has not changed the "basic rule" of leaving the decision to grant an evidentiary to the discretion of the district courts, it has imposed certain limitations on the exercise of that discretion via § 2254(e)(2).  *See Cristin*, 281 F.3d at 413.

fault, attributable to the prisoner or the prisoner's counsel." *Williams*, 529 U.S. at 433. "Diligence will require in the usual case that the prisoner, at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law." *Id.* at 437. When determining if a petitioner has been diligent, "[t]he question is not whether the facts could have been discovered but instead whether the prisoner was diligent in his efforts." *Id.* at 435. In short, if the factual basis of the claim was not developed but the petitioner was diligent in pursuing the claim in state court, the opening phrase of § 2254(e)(2) does not bar an evidentiary hearing. *See Lark v. Sec'y Pennsylvania Dep't of Corr.*, 645 F.3d 596, 614 (3d Cir. 2011).

However, "a petitioner who diligently but unsuccessfully seeks an evidentiary hearing in state court still is not **entitled** to an evidentiary hearing in federal court under AEDPA. Rather, […] whether to hold a hearing for a petitioner who is not at fault under § 2254(e)(2) remains in the discretion of the district court, and depends on whether the hearing would have the potential to advance the petitioner's claim." *Taylor v. Horn*, 504 F.3d 416, 444 (3d Cir. 2007) (emphasis in original); *see Schriro*, 550 U.S. at 473 (explaining that the "basic" pre-AEDPA rule leaving the decision on whether to grant an evidentiary hearing to the "sound discretion of district courts" has not changed under AEDPA). "Where a petitioner fails to forecast to the district court evidence outside the record that would help his cause or 'otherwise to explain how his claim would be advanced by an evidentiary hearing,' a court is within its discretion to deny the claim." *Buda v. Stickman*, 149 F. App'x 86, 90 (3d Cir. 2005).

Here, although evidentiary hearings were not held in any of the eight Petitioners' Rule 61 proceedings, Petitioners do not explain how the factual bases of their claim

needs further development as part of their federal habeas review.[10]  In fact, two of the

eight Petitioners – Lewis (Civ. A. No. 17-724-CFC) and Brown (Civ. A. No. 17-726-CFC)

– explicitly decided to forego a Rule 61 evidentiary hearing when they agreed with the

Superior Court's assessment that an evidentiary hearing was not warranted in their Rule

61 proceedings because the issues were legal in nature.[11]  (*See* D.I. 13-26 at 7, 9, 33,

36 in Lewis, Civ. A. No. 17-724-CFC)  With respect to those two cases, the Superior

Court explained that, "factually the critical factor appears to be whether the defendant

pled guilty or proceeded to trial," and it was "willing to rule on th[e] outstanding [Rule 61]

Motions based upon the pleadings filed to date," subject to the parties' agreement.  *Id.*

at 8. In turn, while it is not entirely clear, it appears as though the remaining six

Petitioners (Grier, Perez, Scott, Smith, Rodriguez, Wingfield) implicitly agreed to forego

an evidentiary hearing in their cases.[12]  Given these circumstances, the Court is inclined

---

[10]At the risk of repetition, the Court emphasizes that all of the Rule 61 motions filed by the instant Petitioners presented the same argument that the OCME misconduct constituted powerful impeachment evidence and, for seven Petitioners, a related identical involuntary guilty plea argument.  The Superior Court denied the eight Rule 61 motions for substantially the same reason, namely, because Petitioners either stipulated to the drug evidence (Brown) or knowingly and voluntarily admitted during their plea colloquy that they committed the drug crimes (Lewis, Grier, Perez, Scott, Smith, Rodriguez, Wingfield).

[11]The fact that Lewis and Brown knowingly waived an evidentiary hearing in state court, and admitted that the issue was legal in nature, suggests that they may not be seeking an evidentiary hearing on the substantive claim presented in this proceeding but, rather, that they are seeking an evidentiary hearing on the issue of procedural default.

[12]The fact that the Superior Court cited its decision denying Lewis and Brown's Rule 61 motions when it denied the Rule 61 motions for the remaining six Petitioners suggests that it did not hold evidentiary hearings in those six cases for the same reason it did not hold one in Lewis's and Brown's cases, namely, because the issue was legal in nature. (D.I. 3-4 in *Grier*, Civ. A. No. 17-792-CFC; D.I. 3-4 in *Perez*, 17-830-CFC; D.I. 3-4 in *Scott*,  Civ. A. No. 17-905; D.I. 2-4 in *Smith*, Civ. A. No. 17-907-CFC; D.I. 2-4 in

to find that there was no failure to develop the factual basis of the claim at the state court level which, in turn, would eliminate the need for an evidentiary hearing here. Nevertheless, exercising prudence, the Court will continue with its analysis.

Although Ringgold and Miller explicitly agreed to forego an evidentiary hearing, it appears that they technically satisfied § 2254(e)(2)'s diligence requirement because, at a minimum, the Superior Court's letter indicates that they originally sought an evidentiary hearing in the manner prescribed by state law.  The Court reaches the same conclusion with respect to the remaining six Petitioners (who may or may not have implicitly agreed to forego an evidentiary hearing).  Since it appears that Petitioners exercised the type of diligence contemplated by § 2254(e)(2), § 2254(e) does not bar an evidentiary hearing,[13] which means that the Court retains discretion over the decision to conduct an evidentiary hearing.

---

*Rodriguez*, Civ. A. No. 17-1140-CFC; D.I. 2-4 in *Wingfield*, Civ. A. No. 17-1159-CFC) Additionally, in a letter filed in six cases (Lewis, Brown, Grier, Perez, Scott, Smith), the ODS asserted that, "On March 21, 2017, [the Superior] Court stated that it 'will proceed to rule on the OCME motions currently pending in New Castle County based upon the submissions which have been made.'" (D.I. 13-27 at 1 in Lewis, Civ. A. No. 17-724-CFC)  Attached to that letter is a list of numerous individuals with pending Rule 61motions premised on the OCME misconduct, and the names of six Petitioners discussed here – Lewis, Brown, Grier, Perez, Scott, Smith  (excluding Rodriguez and Wingfield) – are on that list.  (*Id.* at 3-8)  Since, in that same letter, the ODS did not challenge the Superior Court's expressed intent to rule on the Rule 61 motions on the basis of the filings, it would appear that Petitioners Grier, Perez, Scott, and Smith also knowingly waived an evidentiary hearing.

[13]Alternatively, even if the Court were to conclude that Petitioners did not satisfy the diligence requirement of § 2254(e)(2), then the Court would only be permitted (but not required) to hold an evidentiary hearing if Petitioners demonstrated that their cases fell within the very limited circumstances set forth in § 2254(e)(2)(A) and (B).  Since Petitioners' single-sentence request for an evidentiary hearing does not come close to satisfying the requirements of § 2254(e)(2)(A) or (B), in this alternative scenario, § 2254(e)(2) would bar the Court from holding a hearing in all eight cases.

Nevertheless, Petitioners have not met their burden of showing that an evidentiary hearing would be meaningful in relation to the OCME misconduct/involuntarily guilty plea claim. Their single-sentence request for a hearing does not forecast any evidence beyond that existing in the record that would help their cause, nor does it explain how a new hearing would advance their claim. Indeed, none of the eight Petitioners filed replies to the State's argument that an evidentiary hearing is not warranted. Moreover, given their stipulation to the drug evidence during a stipulated bench trial (Miller) or admission of guilt during their guilt plea colloquy (Lewis, Brown, Grier, Perez, Scott, Smith, Rodriguez, and Wingfield), and their failure to assert their actual innocence, Petitioners have not alleged facts that, if true, would permit them to prevail on their OCME misconduct/involuntary guilty plea claim. Accordingly, the Court concludes that an evidentiary hearing on the OCME misconduct/involuntary guilty plea claim is not warranted in any of the instant cases.

## B.    Evidentiary Hearing on Procedural Default

The Third Circuit has held that § 2254(e)(2) does not bar an evidentiary hearing to determine if a petitioner can establish cause and prejudice to avoid a procedural default. *See Cristin*, 281 F.3d at 416-17 (holding that "the plain meaning of § 2254(e)(2)'s introductory language does not preclude federal hearings on excuses for procedural default at the state level."). Consequently, it is within the Court's discretion to hold an evidentiary hearing on Petitioners' excuses for their failure to appeal the denial of their Rule 61 motions.

29

As previously discussed,[14] the Court has considered, and rejected, Petitioners' reasons for the procedural default, and they do not provide any other evidence or reason that would excuse their failure to appeal the denial of their Rule 61 motions. Therefore, the Court will not hold an evidentiary hearing on the issue of procedural default.

## V.    CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2254 petition must also decide whether to issue a certificate of appealability.  *See* 3d Cir. L.A.R. 22.2 (2011); 28 U.S.C. § 2253(c)(2).  A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  28 U.S.C. § 2253(c)(2); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court has concluded that the instant eight Petitions do not warrant relief. Reasonable jurists would not find this conclusion to be debatable.  Accordingly, the Court will not issue a certificate of appealability in any of the instant seventeen cases.

## VI.    CONCLUSION

For the reasons discussed, the Court concludes that all eight Petitions must be denied.  An appropriate Order will be entered.

---

[14]*See supra* at III. A and B.